ORIGINAL

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case - TXND (Rev. 9/25)

# UNITED STATES DISTRICT COURT
## for the
### Northern District of Texas

_____ Division

Audrey Iverson

)
)
)
)

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

U-Haul International,Inc

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**3-26CV1119-X**

Case No. _____

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☐ Yes ☐ No

## COMPLAINT FOR A CIVIL CASE

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Audrey Iverson |
| Street Address | 2013 Davy Crockett |
| City and County | Forney, Kaufman County |
| State and Zip Code | Texas 75126 |
| Telephone Number | 469-400-7932 |
| E-mail Address | audrey.iverson1276@gmail.com |

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case - TXND (Rev. 9/25)

Defendant No. 1

Name                                U-Haul International, Inc

Job or Title *(if known)*

Street Address                      211 E. 7th Street, Suite 620

City and County                     Austin. Travis County

State and Zip Code                  Tx 78701

Telephone Number

E-mail Address *(if known)*

Defendant No. 2

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 3

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case - TXND (Rev. 9/25)

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✔] Federal question                    [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

9 U.S.C. § 10 (a)(4)– Vacatur of Arbitration Award (Federal Arbitration Act) Arbitrator Exceeded Authority and failure to issue a reasoned decision

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

        The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

    b.    If the plaintiff is a corporation

        The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

        The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

Page 3 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case - TXND (Rev. 9/25)

b.      If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.      The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

The amount in controversy exceeds 75,000 because the underlying arbitration involved claims exceeding $3,000,000.

## III.     Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

This action arises from an arbitration conducted between Plaintiff and U-Haul International, Inc. concerning an incident that occurred in Texas. Plaintiff initiated arbitration and asserted claims exceeding $3,000,000 based on the underlying events. During the arbitration, Plaintiff submitted substantial evidence in support of the claims, including video recordings, sworn witness statements, medical documentation, deposition testimony, and a comprehensive collection of documentary exhibits. Despite the amount in controversy and the complexity of the claims, the arbitration proceeded before a single arbitrator.

## IV.     Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

1. Vacate the arbitration award pursuant to 9 U.S.C. § 10(a)(4);

2. Remand the matter for a new arbitration conducted in accordance with the governing arbitration agreement, including proper arbitrator selection and a full evaluation of the evidentiary record;

3. Grant such other and further relief as the Court deems just and proper.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:           04/08/2026

Signature of Plaintiff        /s/ *Audrey Iverson*

Printed Name of Plaintiff     Audrey Iverson

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

04/08/2026

Statement Of Claims (continued)

The governing arbitration agreement provides that for claims exceeding $500,000, either party may elect to proceed before a panel of three arbitrators. Plaintiff was not informed of this right and did not knowingly or voluntarily waive it.

The arbitrator allowed dispositive motion practice and dismissed all claims without conducting full evidentiary determination. The dismissal was issued despite the existence of extensive evidence submitted by Plaintiff that required evaluation and factual findings.

In reaching the decision, the arbitrator stated that the facts were considered in the light most favorable to Plaintiff. This reflects the application of a summary judgment standard rather than a determination on the merits based on the evidence presented in arbitration.

The arbitrator's decision did not analyze or address the evidence submitted by Plaintiff. The order does not reference the video evidence, witness statements, medical documentation, or other exhibits. The decision does not make credibility determinations, factual findings, or explain how the evidence was weighed.

The arbitration agreement requires that the arbitrator issue a reasoned written decision explaining the essential findings and conclusions. The dismissal order contains only conclusory statements that Plaintiff's claims were unsupported and does not provide a reasonable explanation for the outcome.

Additionally, the arbitrator added RepWest Insurance Company as a party in the final decision while simultaneously dismissing the case. Plaintiff was not given an opportunity to present claims, evidence, or argument regarding that entity before the case was dismissed.

The arbitrator's actions resulted in the claims not being decided on the merits of the evidence. The arbitration was not conducted in accordance with the governing agreement, and the arbitrator exceeded the authority granted under that agreement.

/s/ *Audrey Iverson*
Audrey Iverson
2013 Davy Crockett
Forney, Texas 75126
469-400-7932
audrey.iverson1276@gmail.com

**EXHIBIT INDEX**

Plaintiff submits the following exhibits in support of the Motion to Vacate Arbitration Award:

Exhibit A – Arbitration Award

Final decision issued by the arbitrator in this matter.

Exhibit B – Arbitration Agreement

Agreement governing the arbitration proceedings including provisions related to arbitrator authority and decision requirements.

Exhibit C – Evidence Binder Submitted in Arbitration

Compilation of evidence submitted by Plaintiff, including video recordings, witness statements, medical documentation, and supporting materials.

Exhibit D – Video Evidence (Screenshot and Description)

Screenshot from video submitted during arbitration reflecting a portion of the interaction between Plaintiff and a U-Haul employee.

Exhibit E – Deposition Testimony and Arbitration Procedures

Deposition testimony of Plaintiff and Plaintiff's daughter.

Exhibit F – Witness Statement of Nora Smith

Statement provided by Nora Smith, a witness to the events underlying this dispute..

# EXHIBIT A

## ARBITRATION AWARD

This exhibit contains the final arbitration decision issued in this matter, which plaintiff seeks to have vacated.



Case Number: 01-25-0000-1944

Audrey Iverson
-vs-
U-Haul International, Inc.

## ORDER

I, Cooper Shattuck, the undersigned arbitrator, having been designated in accordance with the arbitration agreement entered into by the above-named parties, and having been duly sworn, and having reviewed and considered, pursuant to the applicable Consumer Rules of the American Arbitration Association, effective September 1, 2014, and the Scheduling Order entered in this matter on December 5, 2025, the numerous documents submitted by the parties, Claimant self-represented, and Respondent represented by counsel, do hereby issue this Ruling on ALL pending motions.

ALL submissions, filings, and documents submitted by all parties have been reviewed and considered, as appropriate. Thus, to the extent necessary, any motions to strike any filings are hereby DENIED.

Both parties have filed dispositive motions pursuant to Rule 33. No party objects to the consideration of these motions nor presents any evidence as to why they should not be considered at this juncture. Substantial cause has been shown that a motion is likely to succeed and dispose of or narrow the issues in this case.

Claimant has made numerous claims. ALL have been considered. However, Claimant has failed to provide or show sufficient evidence to support any legal claim and her dispositive motions must be and hereby are DENIED as a matter of law and her claims should be and hereby are DISMISSED, WITH PREJUDICE. The dispositive motion of Respondent(s)[1] should be and hereby is GRANTED.

More specifically, the facts presented do not support a claim for the award of monetary damages or other relief under any title of the Civil Rights Act, including those enumerated by the Claimant, nor the American with Disabilities Act, nor do they support a claim for an award of monetary damages or other relief under Alabama law for the intentional inflection of emotional distress, for a violation of the

---

[1] To the extent necessary, RepWest is hereby added as a party respondent in this matter.

Alabama Deceptive Trade practices Act, nor for breach of contract.

Further, taking the facts alleged in the light most favorable to Claimant, as disappointing and unfortunate as they may be, they do not give rise to a cause of action under federal or applicable state law. Consumers' recourse in such situations is to do business elsewhere -- to choose not to do business with those who provide customer service such as that alleged here.

DONE this the 9th day of January, 2026.

_____

Cooper  Shattuck, Arbitrator

# EXHIBIT B

## ARBITRATION AGREEMENT

This exhibit contains an arbitration agreement governing the dispute between Plaintiff and U-Haul International, Inc. The agreement outlines the procedures and requirements for arbitration, including arbitrator selection and the issuance of a reasoned decision.

# U-Haul website notice and printed terms of customer contract

## Categories

U-Haul Arbitration Agreement (/Arbitration/)     AAA/NAM Rules (/Arbitration/Rules/)

Forms (/Arbitration/Forms/)     FAQs (/FrequentlyAskedQuestions/)

**U-HAUL Arbitration Agreement ("Agreement")**

**PLEASE READ CAREFULLY. THIS MANDATORY AGREEMENT AFFECTS YOUR RIGHTS. BY ENGAGING IN A "TRANSACTION," "YOU" AND "U-HAUL" VOLUNTARILY AND KNOWINGLY ENTER INTO THIS AGREEMENT WHICH WAIVES YOUR RIGHT TO SUE AND BRING CLAIMS IN COURT, OTHER THAN AS STATED BELOW, OR HAVE A JURY RESOLVE ANY DISPUTE:**

1. Except as expressly provided in this Agreement, "Claims" shall not be pursued in court (except "Small Claims" as defined below), but shall be decided by binding arbitration administered by either the National Arbitration and Mediation ("NAM") in accordance with its NAM Comprehensive Dispute Resolution Rules and Procedures and Supplemental Rules for Mass Arbitrations (https://www.namadr.com/resources/rules-fees-forms/ (https://www.namadr.com/resources/rules-fees-forms/)) or the American Arbitration Association ("AAA") in accordance with its AAA Consumer Arbitration Rules (http://www.adr.org/consumer (http://www.adr.org/consumer)), and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

2. For purposes of this Agreement, the following definitions shall apply:
   a. **"Claims"** is broadly interpreted to include any dispute, complaint, controversy, or cause of action arising out of or relating to your relationship with U-Haul or any prior, current or future Transaction with U-Haul All claims, including assigned claims, brought under any legal theory, whether at law or in equity, are covered by this Agreement and shall include, but not be limited to, all statutory and tort claims, that may be asserted.
   b. **"Equipment"** means any truck, vehicle, trailer, tow dolly, U-Box container, retail purchase, or physical item related to your Transaction.
   c. **"Rental Company"** means the business entity that is responsible for the display, rental, sales, maintenance, and repair of Equipment and policy programs and procedures in a particular geographic area.
   d. **"Small Claims"** means a lawsuit filed in a local court that has jurisdiction to decide cases involving relatively small amounts of money damages.
   e. **"Transaction"** means the commencement, completion, or fulfillment of: A) a request or reservation to rent, use or purchase Equipment or to receive services; B) the use or review of the content of any U-Haul website; or C) any entry onto any U-Haul or U-Haul agent's property.
   f. **"U-Haul"** means all subsidiaries, related companies, insurers, parents, agents, affiliates, and/or independent dealers of the Rental Company, and each of their respective officers, directors, shareholders, managers, employees and other representatives who had anything to do with Your Transaction.
   g. **"You"** means the person who engaged in a Transaction and (as applicable) Your respective subsidiaries, affiliates, agents, Authorized Driver(s) as defined in the U-Haul rental agreement, employees, persons related to You, and Your beneficiaries, estate, spouse, domestic partner, heirs, assigns and other successors-in-interest, as well as all authorized or unauthorized users of the Equipment. "Your" refers to "You."

3. U-Haul and You agree that a U-Haul Transaction affects interstate commerce and that this Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. ch. 1, et. seq.

4. You acknowledge and agree that You have voluntarily chosen to engage in a Transaction with U-Haul rather than a competitor who may offer comparable goods and services but may not require binding arbitration. Arbitration is less formal than court; uses a neutral arbitrator instead of a judge or jury; allows limited discovery; and is subject to limited judicial review. The decision of an arbitrator may be entered and enforced as a final judgment in a court of competent jurisdiction.

5. **Claims may only be brought in an individual capacity and in the name of an individual or entity, and may not be joined or consolidated with the Claims of any third party unless they arise from the same Transaction, nor may any Claims, including assigned Claims, be pursued in court. Claims must proceed on an individual and non-class and non-representative basis. No Claim may be pursued as a class or other collective action. No Claims may be brought in a representative action such as a private attorney general action, or other representative basis. The Arbitrator shall have authority to issue any relief that a court of competent jurisdiction could have awarded only to You or U-Haul individually on a non-class and non-representative basis. If any part of this paragraph 5 is deemed unenforceable as to all or part of a dispute, then the entirety of this Arbitration Agreement shall be null and void as to that dispute or part of the dispute, and therefore that claim must proceed in a court of competent jurisdiction.**

6. If this Agreement conflicts with any arbitration provision in the Rental Contract Addendum/Document Holder or any other prior arbitration provision presented to You at the time of the Transaction, this Agreement contains the most recent reiteration of the Agreement and therefore supersedes all prior arbitration provisions and shall control.

7. Unless otherwise provided in the following rules or by mutual agreement as provided herein, NAM Comprehensive Dispute Resolution Rules and Procedures and Supplemental Rules for Mass Arbitrations (https://www.namadr.com/resources/rules-fees-forms/ (https://www.namadr.com/resources/rules-fees-forms/)) will apply to the arbitration of all Claims seeking $75,000 or less and the AAA Consumer Arbitration Rules (http://www.adr.org/consumer (http://www.adr.org/consumer)) will apply to the arbitration of all Claims seeking more than $75,000. **BY ENTERING INTO THE TRANSACTION, THE PARTIES ACKNOWLEDGE AND AGREE TO AMEND OR MODIFY, WHERE APPLICABLE, EITHER THE NAM COMPREHENSIVE DISPUTE RESOLUTION RULES AND PROCEDURES PURSUANT TO RULE 8 OF THE NAM COMPREHENSIVE DISPUTE RESOLUTION RULES AND PROCEDURES AND THE AAA CONSUMER ARBITRATION RULES PURSUANT TO RULE R-1(C) OF THE AAA CONSUMER ARBITRATION RULES AS FOLLOWS:**

   a. **Small Claims Court.** U-Haul or You shall bring Claims in small claims court instead of arbitration for those Claims that meet the local jurisdiction requirements for Small Claims. The rules of the small claims court shall apply.

   b. **Notice and Demand Procedure**

      i. **Notice of Dispute** ("Notice"): Before initiating arbitration proceedings, the party asserting a Claim subject to this Agreement must give written Notice by mail or e-mail sent to the party or parties against whom a Claim is asserted. Notice to U-Haul shall be sent to: U-Haul Legal Dept., 2727 N. Central Ave., Phoenix, AZ 85004 or by e-mail to: legal@uhaul.com (mailto:legal@uhaul.com;). A Notice form and related information is found at www.uhaul.com/arbitration (https://www.uhaul.com/arbitration). Notice to You shall be sent either to the address or e-mail address provided by You to U-Haul in connection with the Transaction or to another address or email address provided by You to U-Haul. After Notice of a Claim is given, the parties shall attempt to resolve the Claim within sixty (60) days from the receipt of the Notice. The statute of limitations shall be tolled for said 60-day period.

      ii. **Demand for arbitration** ("Demand"): Upon expiration of the 60-day Notice period, or immediately upon the unequivocal rejection of any Claim(s), You or U-Haul may initiate arbitration proceedings by filing a Demand

and Certification of Completion of the Notice of Dispute Process ("Certification") with NAM for Claims seeking less than $75,000 but exceeding Small Claims Court jurisdictional limits, or by filing a Demand with AAA for Claims seeking $75,000 or more. NAM Demand and Certification forms for Claims filed with NAM and AAA Demand and Certification Forms for Claims filed with AAA and related information can be found at www.uhaul.com/arbitration (https://www.uhaul.com/arbitration), and shall include an amount requested in the Demand. If a Demand is filed without the Certification, NAM or AAA shall consider the Demand incomplete and not filed, and not proceed with its administration and invoicing until a Certification has been submitted. If all Claims are mutually resolved within the Notice period, NAM or AAA shall take no further action to administer the Demand.

c. **Special rules for Claims seeking $75,000 or less:**

    i. **NAM Consumer Filing Fee.** If You followed the Notice and Demand Procedure as provided above and paid a filing fee, U-Haul will reimburse You the amount of that fee.

    ii. **Alternative Payment and Attorney Premium.** If You followed the Notice and Demand Procedure set forth above, and the Arbitrator issues an award on the merits of Your Claims that is greater than the value of U-Haul's last written settlement offer sent to You at least fourteen (14) calendar days before the hearing (or submission of documents in a Written Submission-Only procedure), then U-Haul will:

        1. pay the award or $7,500, whichever is greater ("Alternative Payment"); and

        2. pay Your attorney, if any, reasonable attorney's fees, and reimburse expenses (including expert witness fees) that You reasonably incurred for investigating, preparing, and pursuing Your Claims ("Attorney Premium"). To qualify for payment, expenses must be itemized and submitted to U-Haul within fourteen (14) calendar days of the award. The maximum payment under the Attorney Premium is the amount of the award.

d. **Special rules for Claims seeking $500,000 or more:**

    i. You or U-Haul may elect to proceed before a panel of three (3) arbitrators. If a party elects to proceed before a panel of three (3) arbitrators, said election shall be made at the time of filing the Demand. Responding party shall have thirty (30) days from the filing of Your Demand to elect to proceed before a panel of three (3) arbitrators.

    ii. The Federal Rules of Evidence shall be applied in the arbitration proceedings to the same extent as if the Claims had been filed in federal court in the jurisdiction in which the Arbitration proceeds.

    iii. Upon request of a party and good cause shown, the Arbitrator will:

        1. permit each party to submit at least one dispositive motion;

        2. permit each party to serve interrogatories, requests for admission, and requests for production and determine the scope, schedule, and amount of same;

        3. permit at least one deposition of each party; determine the necessity of any additional depositions; and allocate the cost of taking deposition(s); and

        4. permit written submissions and determine the staggered schedule for such submissions.

    iv. Following any arbitration award in this matter, the parties shall both have the right for submission of an appeal. The appeal, if any, shall be handled by the AAA pursuant to their Optional Appellate Arbitration Rules. The parties agree that each party shall be responsible for their own attorney's fees and costs on appeal.

e. **Arbitrator Selection.** Unless otherwise agreed in writing by You and U-Haul, NAM or AAA, as the case may be, shall transmit simultaneously to each party an identical list of no less than five (5) qualified arbitrators chosen from the NAM Hearing Officer Roster or AAA National Roster of Commercial Arbitrators, respectively. The parties may agree

on an Arbitrator and advise NAM or AAA of their agreement. If the parties do not agree, each party will have fourteen (14) calendar days from the transmittal date of the list of arbitrators in which to strike up to two (2) names from the list of arbitrators, number the remaining names in order of preference, and return the list directly to NAM or AAA. If a party does not return the list within the time specified, all persons on the list will be deemed acceptable to that party. From among the persons who have been approved by both parties, and in accordance with the designated order of mutual preference, NAM or AAA shall appoint an Arbitrator to serve. If for any reason appointment cannot be made from the submitted lists, NAM or AAA will repeat the process set forth in this paragraph 7 until the Arbitrator is selected.

f. **Prior Settlement Offer.** Prior to an arbitration decision, the parties shall not disclose to the Arbitrator any communications related to an offer of compromise unless accepted by all parties.

g. **Location of Arbitration Hearing/Governing Law.** The Arbitration shall take place in the County (or Parish) where You reside, either at the time of the rental and/or sale or return of the Equipment, unless otherwise agreed in writing by U-Haul and You. This Agreement shall be interpreted and construed in accordance with the law of the State where the Arbitration takes place. Any and all Claims arising out of or relating to this Agreement, whether sounding in contract, tort or statute, shall be governed by the law of the State where the Arbitration takes place, including its statutes of limitations, without giving effect to any conflict-of-laws rule that would result in the application of the laws of a different jurisdiction.

h. **AAA and Arbitrator Fees.** U-Haul will pay NAM or AAA administrative and arbitrator fees pertaining to the Claims initiated and pursued in accordance with the Notice and Demand Procedure except as set forth in Paragraph 7(d). Notwithstanding the foregoing, the Arbitrator shall have authority to reallocate said fees if the Arbitrator determines that Claims were filed for an improper purpose or that the Claims are patently frivolous and/or unsupported by applicable law or the reasonable extension of the law. Notwithstanding anything to the contrary set forth above, in the event the conditions for multiple (mass) consumer case filings are met as determined by NAM pursuant to its Supplemental Rules for Mass Arbitrations Rule No. 2 or the AAA pursuant to the Administrative Filing Fees section (i)(B) in the Consumer Arbitration Rules, then each party's portion of the NAM filing fees shall be the Mass Filing Fees as set forth by NAM or AAA filing fees shall be the Multiple Consumer Case Filings Fees as set forth by the AAA, respectively.

i. **Attorney's Fees and Costs.** Except as otherwise provided in this Agreement, the Arbitrator shall have the authority to award attorneys' fees and other costs as permitted by applicable law; however, You may not be awarded duplicative amounts of attorney's fees or costs regardless of the number of claimants. U-Haul promises and agrees that it will not seek an award of attorneys' fees or costs unless the Arbitrator determines that Claims are patently frivolous and/or unsupported by applicable law or the reasonable extension of the law.

j. **Arbitrator's Authority.** The Arbitrator **shall:**

  i. Be bound by the terms of this Agreement;

  ii. Apply a statute of limitations to all Claims as though brought in an appropriate court of competent jurisdiction;

  iii. Decide all issues, and award a remedy, based only on the evidence and arguments submitted by a party;

  iv. Resolve all disputes regarding the scope and enforceability of this Agreement, including the enforcement of the class action waiver;

  v. Issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based and to identify the specific types of damages awarded, if any;

  vi. Award a remedy only as to Claims presented at the Arbitration hearing and of which all Parties were on notice at least thirty (30) days before the hearing;

vii. Award any form of individual relief provided such relief would have been available in an individual capacity before a court of competent jurisdiction;

viii. Make rulings and resolve disputes as to the payment and reallocation of fees and expenses, including attorney's fees;

ix. Retain jurisdiction to review and resolve issues between the parties concerning interpretation of the decision. Such issues will be resolved based only on written submissions.

8. **Confidentiality.** In order to protect the confidential, proprietary, and trade secret information of the parties, U-Haul and You agree to negotiate and enter into a Confidentiality Agreement. If U-Haul and You cannot agree on the Confidentiality Agreement, the arbitrator shall have the sole responsibility for determining the appropriate scope of the Confidentiality Agreement. In no event shall the Confidentiality Agreement in any way prevent U-Haul or You from using any document marked as "confidential" in an arbitration proceeding under this Agreement, subject to any ruling on admissibility by the Arbitrator.

9. **Alternate Forum.** By mutual written agreement, the parties may select an arbitration forum other than NAM or AAA and/or modify the procedural arbitration rules. In the event NAM or AAA are unable or unwilling to administer the arbitration, You and U-Haul shall submit the Claims to an agreed upon alternative forum which shall be subject to all other terms and conditions of this Agreement.

10. **Modification.** This Agreement may only be amended by a writing signed by all parties. Only an officer representing U-Haul may agree on behalf of U-Haul to modify the terms of this Agreement.

11. **Severability.** This Agreement is the full and complete agreement relating to the resolution of Claims. If any portion of this Agreement is deemed unenforceable by a court of competent jurisdiction or the Arbitrator, the remainder will be enforceable.

12. **Waiver.** The failure of a party to require performance of any term or condition of this Agreement shall not be deemed to constitute a waiver of any such term or condition, or have any binding or precedential value regarding present or future enforcement of such term.

# EXHIBIT C

Evidence Binder Submitted in Arbitration

This exhibit contains a copy of the evidence binder submitted by Plaintiff during the arbitration proceedings. The binder includes video evidence, witness statements, medical documentation, and other supporting materials provided to the arbitrator for consideration.

**Table Of Contents**

**Exhibit List**

1. Video – Burke: "People like you don't have money."
2. Text Message (Feb. 24, 2024, 7:10 AM)
3. Cedriceka Iverson Statement
4. Cedriceka Iverson Extended Statement
5. Nora Smith Statement
6. Nora Smith Updated Statement
7. MCC Clinic Note
8. BH Neurology Notes
9. Dr. Kwak Evaluation
10. Dr. Kwak Extended Report
11. Terms & Conditions (Arbitration Clause)
12. Repwest Acknowledgment Letter
13. Repwest Denial Letter
14. Gmail – Repwest Denial
15. Gmail – Repwest Arbitration Handling
16. Integrity Complaint Letter ($1,400 offer)
17. Gmail – Shared Attorney Info (Attorney Deception)
18. Claimant's Interrogatories (10)
19. Claimant's Requests for Production (10)
20.A. Email Extending Return Date to February 24, 2024
20. B. Aubrey, Texas Return Receipt Showing Return on February 24, 2024
20. C. Proof of Payment on February 24, 2024
21.Original U-Haul Contract and Arbitration Agreement (Email Dated February 22, 2024)
22. Sworn Declaration Of Cedriceka Iverson
23. Sworn Declaration Of Nora Smith
24. Sworn Declaration Of Audrey Iverson
25. Email to Arbitrator Regarding Respondent's Non-Response and Request to Accept Submitted Evidence
26.Claimant's Motion to Accept Submitted Evidence in Lieu of William Burke's Deposition Testimony
27. Counsel Admission claiming Confirming Repwest Non Party
28. Respondent Email Confirming Receipt and Delay Of Clamiant Filings
29 Journal Entries Suggest By Therapist
30. Provider Letter Redacted
31. Three Year Tax Return Redacted 22-24 Relevant Years
32. Declararation For Cynthia Hooks
33. Record Of Emergency Calls (August- October 2025)
34. Summary Of Claims, Evidence,and Damages Redacted
35. IRS Verified Financial Loss Summary
36. Understanding Metadata and what it proves about my video
37. ExiMeta
38. Proof that IRS Transcipts and Provider Letter Are Orginal
39. Claimant Evidence Showing Ever Section answered AS irrelevant, overly broad, or not proportional to the needs of this arbitration invades Claimant's privacy or seeks privileged information extends beyond the relevant time-frame (Feb. 2024 incident and aftermath)

# EXHIBIT D

Video Evidence (Screenshot and Description)

This exhibit contains a screenshot from video evidence submitted during the arbitration proceedings. The video captures a portion of the interaction between Plaintiff and a U-Haul employee

## Screenshot



# EXHIBIT E

Deposition Testimony and Arbitration Procedures

This exhibit contains deposition testimony provided by Plaintiff
and Plaintiff's daughter

# AMERICAN ARBITRATION ASSOCIATION

**Audrey D. Iverson, Claimant**
v.
**U-Haul International, Inc., Respondent**
**AAA Case No.: 01-25-0000-1944**

---

## CLAIMANT'S NOTARIZED DEPOSITION IN LIEU OF LIVE TESTIMONY

**Date:** October 22, 2025       **Location:** Montgomery, Alabama

---

## NARRATIVE STATEMENT

When I pulled into the U-Haul in **Aubrey, Texas**, I had just parked and was still seated in the truck.
The U-Haul employee, **Mr. Burke**, immediately came outside and began yelling.
The first thing he said was, **"I'm sick of people like you."**

I asked him to please move because he was standing directly in front of the driver's door, blocking me from getting out. I told him that I have difficulty walking and needed room to exit safely.

He didn't move, so my daughter, **Cedriceka Iverson**, got out of her car and said, **"Sir, can you please move? My mom has a hard time walking and standing."**
Even then, he only moved slightly—still not enough for me to feel safe getting out of the truck.

Burke kept complaining about *"being charged extra."*
I said, **"Charge my card."**
At that point, I exited the truck and, once I was standing outside, I began recording because I felt threatened and wanted to document what was happening.

The **eight-second video** clearly shows me, my daughter Cedriceka, the U-Haul truck, and Burke.
He looked directly at me and said, **"People like you don't have money."**
I said, **"I'm recording you,"** and he replied, **"That's fine, I appreciate it,"** just before my phone died.

There were **no other customers present**—only myself, my daughter, and Mr. Burke.
I didn't notice the bystander, **Ms. Nora Smith**, until she approached us later at a nearby gas
station to check on us. She told us she had witnessed the entire incident and gave us her contact
information.

I felt scared, humiliated, and disrespected. My chest hurt and my heart was racing.
Since that day, I've suffered anxiety, insomnia, and panic attacks whenever I think about what
happened.

---

## CROSS-EXAMINATION

### Identity / Background

1. Please state your full name for the record.
   **A.** Audrey D. Iverson.
2. What is your current address?
   **A.** 2650 Baldwin Brook Drive, Montgomery, Alabama 36116.
3. Are you the claimant in this arbitration?
   **A.** Yes, I am.
4. Have you ever testified before?
   **A.** No.
5. Do you understand that this testimony is given under oath?
   **A.** Yes, I do.
6. Why were you in Texas at the time of this incident?
   **A.** I was relocating for a job offer.
7. What type of work do you do?
   **A.** I'm self-employed and operate a small business. I was also working a full-time job
8. Did the incident affect your ability to work?
   **A.** Yes—it caused emotional stress, panic attacks, and insomnia.

---

### Incident Details

9. Describe what happened in your own words.
   **A.** (Narrative above.)
10. Who was present during the incident?
    **A.** Me, Mr. Burke, and my daughter, Cedriceka Iverson.
11. Where was your daughter parked?
    **A.** In her car beside the U-Haul truck.
12. When exactly did you start recording?
    **A.** After I got out of the truck, I felt unsafe.
13. Were there any other customers or employees present?
    **A.** No.

14. What was Mr. Burke's first statement to you?
    A. "I'm sick of people like you."
15. Did he mention anything about lateness or return times?
    A. No.
16. How did you respond?
    A. I told him to please move so I could get out of the truck safely.
17. What did your daughter say?
    A. "Sir, can you please move? My mom has a hard time walking and standing."
18. Did he move?
    A. Only slightly—not enough to give me safe space.
19. Did he appear angry?
    A. Yes, very.
20. When he said "people like you don't have money," how did he say it?
    A. Directly, looking at me, in a condescending tone.
21. How did that make you feel?
    A. Humiliated, scared, and embarrassed.
22. Did you say anything after that?
    A. I said, "I'm recording you."
23. What did he say next?
    A. "That's fine, I appreciate it."
24. Did you remain calm?
    A. Yes.
25. Did you feel threatened?
    A. Yes.
26. Did you notice Nora Smith at that moment?
    A. No.
27. When did you first see her?
    A. At the gas station after we left, when she approached us.
28. What did she tell you?
    A. That she saw everything and wanted to make sure we were okay.

---

## Trick / Credibility Questions

29. Could "people like you" have meant "customers
    A. No—he was looking directly at me
30. Could he have been joking?
    A. No—his tone and demeanor were hostile.
31. Did you raise your voice or say anything disrespectful?
    A. No, I stayed calm the entire time.
32. Did you threaten to post the video?
    A. No, it was only for documentation.
33. Did you alter the video?
    A. No. It is exactly as recorded.

34. Did your daughter provoke him?
    A. No—she only asked him to move.
35. Could your memory be mistaken?
    A. No—the incident was traumatic and unforgettable.

## HIPAA / Privacy Section

36. Have you signed any medical authorizations or HIPAA releases for U-Haul?
    A. No.
37. Why didn't you sign them?
    A. Because they were pre-filled with my personal information, my name, date of birth, provider, and the last four digits of my Social Security number—without my consent. I also refused because of my past experience with Respondent's counsel, who previously violated my rights by contacting my medical provider without authorization.
38. So, your refusal was based on those past experiences and privacy concerns?
    A. Yes, absolutely.
39. Isn't it true that you refused because you were hiding something?
    A. No. I had already provided all relevant medical records.
40. Did you feel pressured to sign the forms?
    A. Yes, I was told there would be "consequences" if I didn't.
41. Did you still refuse?
    A. Yes—because my refusal was lawful and justified.
42. What documents did you produce instead?
    A. Certified records from Provider notes, and 911 emergency logs, along with encrypted IRS transcripts and a letter from BH neurology which is encrypted.
43. Were those records complete and authenticated?
    A. Yes.

## Emotional Distress / IIED

44. How did this incident make you feel emotionally?
    A. Humiliated, scared, and unsafe.
45. Did you cry afterward?
    A. No. I held it in didn't want to cry in front of my daughter
46. Did anyone comfort you?
    A. My daughter and the bystander, Nora Smith.
47. Did you have any physical symptoms?
    A. Yes—chest pain and shortness of breath.
48. Have you experienced anxiety since?
    A. Yes, regularly.
49. Have you had trouble sleeping?
    A. Yes, insomnia.

50. Did you seek medical attention?
    **A.** Yes
51. Did you have anxiety before this incident?
    **A.** No.
52. How has this affected your confidence?
    **A.** I now avoid confrontations and public places.
53. Did you continue with your relocation?
    **A.** No—I moved back to Alabama a few days later.

---

**Additional Trick Questions**

54. Did you plan to record the incident before it happened?
    **A.** No. I started recording only after I felt unsafe.
55. Were you trying to get a refund from U-Haul?
    **A.** No.
56. Did you expect money from filing this arbitration?
    **A.** I expected accountability and fairness.
57. Have you sued anyone else before?
    **A.** No.
58. Did you ever exaggerate the facts?
    **A.** No.
59. Is the video you submitted authentic?
    **A.** Yes, exactly as recorded.
60. Are all your answers today true?
    **A.** Yes.

---

## SUPPORTING LAW

- **45 C.F.R. § 164.508(b)(2)** – HIPAA authorizations obtained under coercion are invalid.
- **5 U.S.C. § 552a** – The Privacy Act prohibits unauthorized use of personal data.
- **AAA Rule R-22(b)** – Discovery must remain proportional and protect confidentiality.
- **Ex parte Meadowbrook Ins. Grp., 987 So. 2d 540 (Ala. 2007)** – Blanket medical releases are impermissibly invasive.

---

## SWORN DECLARATION

I, **Audrey D. Iverson**, declare under penalty of perjury that the foregoing deposition statement is true and correct to the best of my knowledge, information, and belief.

Executed this **22 day of October 2025**, in **Montgomery, Alabama.**

*Audrey Iverson*

**Audrey D. Iverson**

Claimant                    *MRFB*

State of Florida, County of Charlotte

**Notary Public:** *Meagan RF Bestic*

My Commission Expires: 03/19/2027

Audrey Iverson provided a drivers license as identification    *MRFB*



MEAGAN R F BESTIC
Notary Public - State of Florida
Commission # HH375324
Expires on March 19, 2027

Notarized remotely online using communication technology via Proof.

# DEPOSITION OF CEDRICEKA IVERSON (FACT WITNESS FOR CLAIMANT)

*Audrey D. Iverson v. U-Haul International, Inc.*

AAA Case No.: 01-25-0000-1944
Date: October 22, 2025
Location: Glenn Heights, Texas

---

## WITNESS NARRATIVE

On **February 24, 2024**, I was in my own car following behind my mom, **Audrey Iverson**, as she drove a U-Haul truck to return it to the **Aubrey, Texas U-Haul location.**

Before she even turned the engine off, a man named **Burke** came out of the office yelling. He looked upset and went straight to the driver's side of the truck.

When he got close, I heard him yell, **"I'm sick of people like you."** My mom was still inside the truck and calmly said, "Sir, can you please move so I can get out?" He did not move.

My window was down, and when I heard that, I got out of my car and walked toward the U-Haul truck. I said, **"Sir, can you please move? My mom has a hard time walking and standing."** He only moved slightly — not enough to give her space to safely get out.

He said something about her "being charged extra." My mom said, **"Then charge my card,"** and took out her phone to start recording because of how he was acting.

The **8-second video** shows exactly what happened next: once she got out of the truck, **Burke** looked directly at her and said, **"People like you don't have money."**
My mom then said, **"I'm recording you,"** and Burke replied, **"That's fine, I appreciate it,"** right before her phone battery died.

Before we got in the car, another U-Haul employee came out. My mom phone had died by the time the female employee came out, and she only came out when it was over, the entire thing happened **in the parking lot,** not inside the building.

My mom was shaking, pale, and quiet. She didn't yell or argue. She said softly, "Let's go."

We left, and a woman named **Nora Smith,** who saw the entire incident, followed us to a gas station nearby. She came over to check on us and gave my mom her contact information.

During the incident my mom was trembling. We both felt **embarrassed, humiliated, scared, and violated.**

After that day, she started having panic attacks and trouble sleeping. She had never experienced anxiety or panic attacks before.

My mom had come from **Alabama to Texas** for a job offer but moved back to Alabama a few days later because she was too emotionally shaken to stay.

That's everything I personally saw, heard, and remember.

---

## CROSS-EXAMINATION

### Identity and Background

Q. State your full name.
A. Cedriceka Iverson.

Q. Relationship to Audrey Iverson?
A. She's, my mother.

Q. Where do you currently live?
A. Glenn Heights, Texas.

Q. Was your mother living in Texas at that time?
A. She was relocating there from Alabama for a job offer.

Q. Do you know the company name?
A. No, I don't recall it offhand.

Q. Did she plan to stay in Texas?
A. Yes, but she moved back to Alabama after the incident.

---

### Events at U-Haul Lot

Q. Describe what you first saw when arriving.
A. Burke came out of the U-Haul office yelling and walked right toward my mom's truck.

Q. What was he yelling?
A. "I'm sick of people like you."

Q. Are you certain you heard that correctly?
A. Yes, I'm sure.

Q. Where was your mom at that moment?
A. Inside the truck, with the engine running.

Q. Did she say anything to him?
A. She asked him to move so she could get out.

Q. Did he move?
A. No.

Q. What did you do?
A. I got out of my car and asked him politely to move because my mom has trouble walking and standing.

Q. Did he move then?
A. Slightly, but not enough for her to safely exit.

Q. Was he aggressive in his tone?
A. Yes, very.

Q. Did your mom tell him she had a disability?
A. Yes, she told him she had difficulty walking.

Q. Did he acknowledge it?
A. No, he ignored her.

Q. Was your mom in distress at this point?
A. Yes, she looked scared and confused.

Q. Did you record this on video?
A. My mom did, but only the last part.

---

## The Recording

Q. What does the video show?
A. Burke saying, "People like you don't have money."
My mom replied, "I'm recording you," and Burke said, "That's fine, I appreciate it," right before her phone died.

Q. Was his tone sarcastic?
A. Yes, mocking.

Q. Did your mom threaten him?
A. No.

Q. Was anyone else there?
A. Another employee came out at the end.

Q. Did that person help or intervene?
A. No.

Q. Did anyone from U-Haul apologize?
A. No.

---

## Aftermath

Q. What happened after you left the U-Haul parking lot?
A. We stopped at a gas station nearby.

Q. Who is Nora Smith?
A. A bystander saw the incident and followed us to make sure we were okay.

Q. Did Nora say what she saw?
A. Yes, she saw the whole thing and gave my mom her contact info.

Q. How was your mother acting at the gas station?
A. Trembling, pale, and quiet.

Q. Did she cry?
A. She looked like she was trying not to.

Q. Did she appear humiliated?
A. Yes.

Q. Were you also upset?
A. Yes, very.

---

## Consistency Questions

Q. Could Burke have meant "people returning trucks late" when he said, "people like you"?
A. No, he was looking directly at my mom.

Q. Isn't it true that your mom got upset first?
A. No, Burke started yelling before she said anything.

Q. Could the sound from the parking lot have made you mishear?
A. No, his voice was loud and clear.

Q. Was your mom recording to provoke him?
A. No, for her protection.

Q. Did you exaggerate how close he stood?
A. No, he was very close—almost touching the door.

Q. Was your mom in the truck when he said, "people like you don't have money"?
A. No, she was out of the truck by then.

Q. Do you have proof she was scared?
A. Yes, she was shaking and pale and couldn't even speak clearly.

Q. Has your mom had panic attacks before this?
A. No.

Q. Did she start having them afterward?
A. Yes.

Q. Did she receive treatment?
A. Yes, she followed up with her providers.

Q. Did this affect her relocation?
A. Yes, she moved back to Alabama because of it.

Q. Did you write your statement the same day?
A. Yes.

Q. Why did you later write a supplemental statement?
A. To add what I remembered and make sure I included everything.

Q. Did anyone help you write it?
A. No.

Q. Did you and your mom discuss what to say?
A. We talked about what happened but didn't plan statements together.

Q. Were both statements true?
A. Yes.

Q. Is your testimony today consistent with those statements?
A. Yes, exactly.

Q. Do you believe Burke's comments were based on discrimination?
A. Yes.

Q. How did you personally feel during the incident?
A. Scared, humiliated, and helpless.

---

## Closing Verification

Q. Everything you've said here today is true and correct to the best of your recollection?
A. Yes.

Q. Did anyone force or coach you to say these things?
A. No.

Q. Have you reviewed your previous statements?
A. Yes, and this testimony matches them exactly.

---

## DECLARATION AND NOTARIZATION

I, Cedriceka Iverson, declare under penalty of perjury pursuant to **28 U.S.C. § 1746** that the foregoing testimony is true and correct to the best of my knowledge and recollection.

This sworn declaration is submitted **in place of live testimony** as permitted by **AAA Rule R-34** and is provided as an ADA accommodation for the Claimant, Audrey D. Iverson.

Signature: *Cedriceka Iverson*
Printed Name: Cedriceka Iverson
Date: October 22, 2025

**STATE OF TEXAS – COUNTY OF DALLAS**
Subscribed and sworn before me this 22nd day of October 2025.

Notary Public: *Makhia Shaw*
My Commission Expires: 03/20/2029

MAKHIA SHAW
Notary Public, State of Texas
Comm. Expires 08-20-2029
Notary ID 135528791

# EXHIBIT F

Witness Statement of Nora Smith

This exhibit contains a written statement provided by Nora Smith,
a witness to the events underlying this dispute, which was
submitted as part of Plaintiff's arbitration evidence.

**Nora Smith**
15117 Fishtrap Rd Apt 1210
Aubrey, TX 76227
norausmith@gmail.com
Phone: 214-918-9659

**Date:** 12/03/2024

**To Whom It May Concern,**

I am writing to provide an updated account regarding the incident I witnessed on February 24, 2024, at the U-Haul parking lot near Southern Fastening Systems.

As previously stated, I observed an interaction between Ms. Audrey Iverson and U-Haul employee Mr. William Burke. Mr. Burke displayed unprofessional and inappropriate behavior, including making racially insensitive remarks such as "sick of you people" and "people like you don't have money." These statements were directed at Ms. Iverson, who was accompanied by her daughter.

During the incident, Ms. Iverson began recording the exchange. I later approached her at a nearby gas station to offer my contact information as a witness and to apologize for what I had witnessed. Following the incident, I spoke with Ms. Iverson on the day it occurred and again the next day, February 25, to provide her with the details of what I saw. She later emailed me a summary of my account, which I confirmed was accurate. I have not communicated with Ms. Iverson since February.

Yesterday, on December 3, 2024, I spoke with Mr. Solly, the attorney representing U-Haul. This was the first time I had ever spoken to him. After reviewing my messages and voicemails, I can confirm that he had not previously attempted to contact me or left a message, at least not from the number he called from.

Mr. Solly inquired about an incorrect address on my original statement, which I clarified was likely an approximation provided by Ms. Iverson because she did not have my exact address at the time. My correct address is:
**15117 Fishtrap Rd Apt 1210**
**Aubrey, TX 76227**

Mr. Solly also asked when I last spoke with Ms. Iverson, to which I confirmed it was in February. He mentioned contacting my business line and ultimately reaching out to my assistant, Erika, to connect with me. Erika, who is also my sister, informed me that she had responded to an email from Ms. Iverson while I was on vacation for the holidays.

I stand by my original account of the incident, as well as my observation that Mr. Burke's behavior toward Ms. Iverson was unprofessional, rude, and racially discriminatory.

Thank you for your attention to this matter.

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET 3-26CV1119-X

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Audrey Iverson
Forney, Texas

**DEFENDANTS**
U-Haul International, Inc

**(b)** County of Residence of First Listed Plaintiff    **Kaufman County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Audrey Iverson "Pro Se Plaintiff"
2013 Davy Crockett
Forney. Texas 75126

Attorneys *(If Known)*
Soloman Thomas
The Clark Building
400 20th Street North

RECEIVED
APR - 8 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)*    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ☐ 360 Other Personal / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Injury / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education / ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
9 U.S.C. § 10 (a)(4)– Vacatur of Arbitration Award (Federal Arbitration Act) Arbitrator Exceeded Authority
Brief description of cause:
Petition to vacate arbitration award under 9 U.S.C. § 10 (a)(4) for arbitrator exceedinh authority and failure to issue a reasoned decision

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS **A CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
3,000.000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____